Your Honors, we're here this morning about a dog. I mean, this is what the case is about. It's a German Shepherd named Max. Has someone from the estate tried to get the dog back? Yes, Your Honor. There have been attempts made just to have someone from the estate take possession of the dog, but because of various claims being made by the Southern Pines Animal Shelter regarding, just to be frank, Your Honor, tens of thousands of dollars that they want from the estate to return the dog, there has been no agreement made to release the dog. But the dog is still But they're no longer saying, are they saying they won't release it to someone because it's vicious? Or they will release it, but only if you pay the Without payment, Your Honor, the only thing that's been brought up at this point is regarding the dog. Is the dog up for adoption? My understanding is, Your Honor, it has not been put up for adoption just because of the pendency of this action, although there is no court order or anything of that nature that is preventing the Southern Pines Animal Shelter from putting the dog up for adoption. He just has not been. Have you all gone through our mediation process? I believe there was an attempt made, Your Honor, but the parties were, again, substantially far apart on the dog at the time. The mediation was actually offered, Your Honor. Mr. Owett had not yet passed, and so since the estate has taken over the mediation, there was no further attempts at mediation. How much money is involved at this point? Well, Your Honor, I believe that's, and, of course, none of this is in the record, Your Honor, but I believe Southern Pines Animal Shelter has, in order to return Max to the niece who is the administrator of the estate, has demanded something like $40,000 or $50,000 for the care of the dog during this time period, although, of course, our position is that he's been unlawfully in the possession of Southern Pines Animal Shelter this entire time. Are you still seeking damages as well? Your Honor, at this point, there's also attorney's fees that have accrued over time, which the estate would be entitled to recover. All told, everybody, what's at stake here? Well, Your Honor, at stake in this case here is, Your Honor, whether or not the ordinance constitutes the possession of the dog, and then ultimately, I guess the primary issue, Your Honor, is who's owed what, if anything, from the possession of the dog during this time period, including attorney's fees. So that would kind of be the ultimatum here at the end of the day. The ordinance that we're here about, Hattiesburg Ordinance 2090, Section 12, subsection G, is actually the part that we're here arguing today is unconstitutional because what the ordinance says is that any animal that has been impounded by the City of Hattiesburg or in the possession of the City of Hattiesburg for three days shall become property of the city at the expiration of the third day, regardless of whether the owner of said animal even knows the city has possession of the animal or not. The argument, or the district court. Are you saying you're bringing a facial challenge? We're bringing both, Your Honor, a facial challenge and an as-applied, because our belief is, Your Honor, and our stance is that the ordinance is unconstitutional in its face because it allows the City of Hattiesburg to take possession and ownership of anyone's animal, whether it be cattle, a sheep, a cat, a bird, any animal, after three days, whether the owner knows that the city has the animal or not. And what happens is, as we saw in this case, when Mr. Holt went before the county court to try to take possession of his animal, the only thing the county court in Forest County, Mississippi, said was, did they have the dog for three days? Yes, they had the dog for three days, so therefore it belongs to the City of Hattiesburg. And that was the rule in the county court when Mr. Holt went before them. So there was no opportunity to be heard on the matter, no pre-notice before the dog became property of the City of Hattiesburg. The only question was, did they have it for three days? And that, Your Honor, there's no post-deprivation remedy in the ordinance. There's no pre-deprivation remedy in the ordinance. There's no requirement of a hearing. No citations are even required for the city to take permanent possession of an animal after three days. The district court never really ruled on, it simply found that Mr. Holt lacked standing to even challenge the ordinance facially because it said that because he had a hearing, although the substance of the hearing was unreasonable, the district court found that because he did have a chance to go before a judge at some point, therefore he did not even have standing to challenge the facial constitutionality of the ordinance. Your Honor, we kind of believe, too, that the district court kind of looked at that in backwards order, whereas the ordinance, Mr. Holt had standing at that point to challenge the ordinance. The primary thing that I think in some of the cases that have been cited, Your Honor, especially the Centel v. New Orleans, and I might mess up this name, but Nitschia v. New York, which are two U.S. Supreme Court cases, do find that the states have the authority to police dogs, and we're not here challenging whether or not the state has the power to police dogs. Whether or not an individual has a property interest is derived from state or common law. In this case, the state of Mississippi has delineated that a person has a property interest in a dog, much like in the Centel v. New Orleans case, so long as they follow a few simple guidelines, such as having a collar and evidence of a rabies vaccination. And in this case, and when we go back to Centel, that's essentially what the U.S. Supreme Court held was, well, the state has the authority to police dogs, and so we're not challenging that. But in this case, Mr. Holt had a clearly established property interest in this dog because Max, the German Shepherd, had all the requirements of state law to be property. He had a collar and he had proof of rabies vaccination. In fact, he was a registered German Shepherd, so he went above and beyond what even state law would require to become what is defined as property and to have a property interest in the state of Mississippi. And so when the city then takes the property of Mr. Holt without notice or without a hearing, that's where the constitutional violation comes in. And I want to also point out that Mississippi law, which is where the property interest, where the court looks to define a property interest, actually says in Mississippi Code 2199 that a municipality may set up a law for the destruction of an animal unless he has a collar and unless he has proof of rabies vaccination. So the state of Mississippi has clearly defined the property interest in this case. Now, I know the district court actually did not get to the decision of whether or not there was a property interest and whether or not hearing and notice was required, but, John, I believe that there's enough evidence here that the court could go ahead and rule on that issue, reverse the district court's ruling and render that issue as to whether or not Mr. Holt actually had a property interest, which required notice and required a hearing before the city of Hattiesburg was able to take possession of Max. And so, Your Honor, again, the only issue that the district court really even got to is whether or not Mr. Holt had a hearing, which the district court held he had multiple hearings, and we don't deny the fact that Mr. Holt was before a judge on several occasions regarding Max. Our issue, though, is the fact that this is a facially unconstitutional ordinance. So, therefore, any hearing that Mr. Holt would have based upon this ordinance would not be a meaningful hearing within the law. And, Your Honor, since Mississippi has established Mr. Holt's property rights in this dog and since the city of Hattiesburg ordinance allows for an animal, any animal, to be taken without notice and without due process, we are asking this court to reverse the district court. And while you can remand on the issue of whether or not this dog did meet the requirements for Mr. Holt to have a property interest, we believe that Mississippi law is clear on this point regarding the property interest, and this court could actually render that decision or alternatively remand to the district court for determination as to whether or not Mr. Holt had a property interest in this dog. And, Your Honor, if there are no other questions, that would be the extent of my argument at this time. Thank you, sir. Thank you. Judge Owen, Judge Dennis, Judge Weiner, may it please the Court, my name is Clark Hicks and I represent the city of Hattiesburg, Mississippi. As the Court is aware, this appeal centers around the empowerment of a canine in 2015, and as I was driving up here from Hattiesburg, I thought you may wonder what's the status of Max today in 2019. I'm a dog's owner, plural myself. I can report that as of a visit on Monday that Max is alive and well. I have permission from counsel to show the Court he remains under the care of Southern Pines Animal Shelter in Hattiesburg. He's a black and tan German Shepherd. The expense for Max's care, the Court, Judge Owen, you asked about, has not and will not, to my knowledge, ever be assessed to the Holt Estate. The expense for his care has been assessed to the city of Hattiesburg. Max will not be placed at any time for adoption or euthanized at any time pending further order of the Hattiesburg Municipal Court. Has somebody from the estate tried to go get him? Your Honor, I am not aware. If they did, will the city agree to turn him over to the niece? If Southern Pine Animal Shelter determines that Max is in a position that he is not a threat to the public, the city has always voiced no objection to its return, provided the Southern Pine Animal Shelter feels as though the dog is adoptable. Has that been made clear to the shelter? Yes, and the shelter has made that clear. The shelter's position has been that the dog is not adoptable, that the dog, and you've seen in the record that the dog had a history of biting a couple of folks. It's contended to be vicious. It had lived for a number of years in pretty bad conditions. But you don't know if the city, if someone from the estate tried to get the dog and the shelter said no because you can't because it's vicious. To my knowledge, there has never been a request, Judge Owen, from anyone since Mr. Holt has died. No one's driven over to the Southern Pines Animal Shelter or contacted the city and said we want Max. To my knowledge, that's never happened. I do want the court to know that throughout this situation for the last several years, the city of Hattiesburg, Southern Pines Animal Shelter, and the courts, both municipal court in the city and the county court, they have been balancing the interests of the safety of the public, Mr. Holt before he passed away, and the best interests of Max. You saw that how this got started was Mr. Holt, there was a call, emergency personnel showed up. Mr. Holt had fallen. The dog was running around in a very bad situation. The house was in deplorable conditions. They tried to capture the dog. They let the dog jump through a broken window and ran wild for two or three weeks before somebody called and said the dog's barking and they're afraid to go outside. It's been since that time the dog has been impounded by the city. But what I want to point out is what Judge Oseden, who wrote a very lengthy opinion, Judge Oseden found, look, once the dog was impounded, he was not given up for adoption. He was not euthanized. Mr. Holt had his day in court. In fact, he's had multiple days in court before he passed away. It went before city court, with council, with a full hearing on what do we do with Max. It was determined that Max was a threat to Mr. Holt himself, that he was a threat to his caregivers. The Veterans Administration Healthcare had been coming out to help Mr. Holt. They felt threatened. Council then appealed that to county court. When it went to county court, there was another full hearing on this issue, at which council again attended, and the county court determined he's a threat, we can't let him go, and he remanded it, that is the county court judge, back to the city court. It was from that then there was an appeal to circuit court, and this is what I wanted to address to your honors. You may notice there's parallel litigation going on. We ask that Judge Oseden abstain, but I want the court to know that we do not contest Judge Oseden's decision not to abstain based on parallel state and federal proceedings. However, I do want this court to know, for informational purposes, that the state appeal of what to do with Max from city court to county court and now in circuit court of Forest County, that's still pending, and pending before Judge John Mark Weathers, the Forest County Circuit Judge, is the constitutionality of the Hattiesburg Animal Ordinance. So before this court and before the district court were ever even asked to pass upon what to do with Max in constitutionality, this was all pending in state court. The court asked for supplemental briefing on the issue of standing, and I have actually struggled with this one. That is the issue of whether or not the claim has survived. Mississippi statutes specifically say that, quote, personal actions survive. Personal actions in Mississippi are broadly defined to include a claim for recovery of personal property. Mr. Wade has argued that Mr. Holt was claiming recovery of Max. The question that Judge Owen raised now, though, is anyone now seeking recovery of personal property? We contend that there is no one seeking recovery of Max, that he is under the care of the That's not in our record. Correct. There's nothing in the record one way or the other, whether anyone is seeking recovery of Max. If no one is seeking recovery of Max, we contend that the action abated, that there has been no survival of this action, and that there is no standing at this time due to the death of Mr. Holt. Should we do a limited remand to the district court to make that fact-finding? It would be helpful, Judge Owen, to know whether someone from the estate does want a return of Max, but number two, I think there needs to be a determination by Southern Pines Animal Shelter and their experts of whether or not Max is adoptable and is in a state at which it would be safe to turn him over to a caregiver. The last thing we want to do is turn him over to some distant relative of Mr. Holt, who I believe lives in Texas, and then they drive to Texas and Max starts attacking someone. So I think there would have to be a multiple determination on that issue. What about damages? Are they seeking, is it your understanding they're seeking monetary damages? Let's say Max dies today. Is the estate seeking damages? That would survive, wouldn't it? If they are, in fact, seeking damages, I'm not clear on that. This is what I would point out. On the appeal, the appeal brief only addresses constitutionality of the statute. It doesn't raise any other issues. It's strictly a constitutional. The case is moved unless they're either seeking the dog or damages or both, it seems to me. So if we don't know if someone's seeking the dog and we have to have a fact finding on that, we don't need that. If there's some indication they're seeking damages, and it seems to me that would survive under the Mississippi statutes, wouldn't it, a cause of action for damages? I think in fairness that under Section 1983 of Mississippi law that a cause of action for damages would survive. It's just not clear to me on appeal whether they're still seeking damages. Could you speak into the microphone? I can't hear you. I would contend that under Section 1983 that a cause of action for damages does survive, but I believe that on this appeal they're not seeking damages. They're simply seeking the constitutionality determination, which, Judge. . . It's their federal complaint. Did they ask for damages? They did. Okay. They did. They know that they're seeking damages. Judge Oserden, I would want to point out, passed on the issue of the constitutionality. Judge Oserden determined that there was an adequate number of due process in place. There was a notice. There were hearings, hearings in both city court, hearing in county court. Judge Oserden determined that there was no need to touch upon the constitutionality of the statute because Mr. Holt had actually multiple opportunities to have his day in court and multiple hearings from which multiple judges determined whether or not he was or was not entitled to a return of the dog. In fact, the court, I think, for purposes of appeal needs to focus in directly on that issue because that's the issue raised on appeal is, was Judge Oserden correct in determining that there were adequate post-deprivation remedies provided to Mr. Holt and, therefore, it was unnecessary to pass upon the constitutionality of the statute? And we believe that Judge Oserden was correct. I do want to point out, Your Honors, that there were several rulings by the district court which were not addressed on appeal. For instance, the mayor was sued in the case. The liability of Mayor Dupree has not been raised. We contend that has been waived. They also raised a Fourth Amendment seizure claim and an equal protection claim, neither of which has been raised on appeal. Their entire attack on appeal is under the Fourteenth Amendment in which they claim that the Hattiesburg Animal Ordinance Statute violates due process because after a three- or five-day expiration, depending upon your reading of the ordinance, the city becomes the owner of the animal. I would point out again, Your Honor, that the statute goes on to state that the owner still has the right to redeem and adopt the dog provided that the fees are paid during the period of impoundment. And I also would point out that in this case it is irrelevant, as Judge Oserden pointed out, because the dog was not adopted and the dog was not euthanized. There were hearings that were held before multiple judges on the status of the dog. The district court, I would point out, declined to decide if Holt had a protected constitutional interest in Max. And I thought this was a very interesting question that Judge Oserden decided not to pass upon. You have seen the Sentel decisions, which Mr. Rade referenced and is in our brief, and the Nishia, N-I-C-C-H-I-A, these old United States Supreme Court cases, one from 1897 and one from 1920, which essentially say that dogs are subjected to drastic police regulations without violating civil rights. We contend that those United States Supreme Court decisions, if the court decides to pass upon the constitutionality of the statute, control and would support that this particular animal ordinance, which is not any different than animal ordinances that you would see in other states and in other cities, is, in fact, constitutional. I would contend, Your Honor, that it's not necessary to pass upon the constitutionality of the statute. I think that Judge Oserden sort of deftly handled the issue to the particular facts and circumstances of this case and found that because in this particular case, because Mr. Holt had adequate due process. Well, it depends, doesn't it? Because if the county court, if it limited its examination to whether Max was with the shelter for three days, what's adequate about that if Mr. Holt never had adequate notice? I want to first contend, Your Honor, that the record will show that Mr. Holt actually did, and Judge Oserden put that in his opinion, that notice was provided to a point of contact. Mr. Holt was in the hospital when the dog was impounded. There was notice given to a point of contact, Mr. Smith. There was notice given to the veterinarian who's well-known in Hattiesburg, Mr. Mayfield. But Mr. Holt didn't have control of the veterinarian. He was not deputized to speak for Mr. Holt. Neither of these people were authorized to speak for Mr. Holt regarding Max. Fair enough. And Judge Oserden found that notice was provided directly to Mr. Holt by the shelter manager, and you'll see that in the court's opinion, that it was given directly to Mr. Holt in the hospital. That being said, once the dog was impounded, the dog was not given up for adoption and obviously not euthanized. There was a hearing that was held for Mr. Holt. And they said, no, we've had him for three days, that's the end of it. Oh, no. No, there was a hearing that was held in city court at which there was a discussion and determination whether he's entitled to his dog, and city court determined listening to the animal control warden and the shelter owners and emergency medical technicians who had been at the home, a number of witnesses you will see in the record determined that Max actually was a threat to not only to Mr. Holt but to caregivers and to the public. And it was under those circumstances that it was determined that Max should not be returned. And that is why Max has remained under the care. I thought the reasoning they gave was Max became the city's property because Holt had three days to redeem Max, and he didn't. No, Your Honor. If you'll look, the – And after that, then they went into, after the hearing, they issued some sort of order or post hoc reasoning. I mean, it's kind of hard to tell what they did. It seems like it was shifting ground. Well, if you'll look, I think it's 399 in the record. If you'll look at the municipal court order, the very first order, there is the grounds that you will see from which Max was detained, and that was that the city court, after hearing all the evidence, determined that Max indeed was a threat to Mr. Holt, was a threat to caregivers, was in fact was concerned that Mr. Holt did not even have the physical ability at that time to restrain Max. That was the reasoning for his detainment. It was from that order that there was an appeal to county court. Now, county court, you may remember, Judge Owen, did look at the technicality of the three days and it became that the dog became the owner of the city, but the county court then, you'll look in that order, remanded it back to the city court to determine the best disposition for Max and if he was in a position at that point from which he could be released for adoption. However, Mr. Holt then appealed it, that decision, to the circuit court where it remains pending to this day. We contend, Your Honor, that the 35-page opinion from Judge Osedin was eminently correct. I was expecting him to pass upon constitutionality, but he skirted around that and looked to the facts and circumstances and for those reasons we feel that Judge Osedin should be affirmed. Thank you. Your Honor, just to touch on a couple of things real quick. In regards to what the county court did, the county court threw out the charges that Max was a dangerous animal because there was never a citation issued for said charges and actually threw out that crowns and reasoning, finding that it would be, ironically enough, unconstitutional to proceed on those grounds, seeing as how Mr. Holt was never given notice that those were the allegations against him in city court. So the county court actually dismissed those allegations, finding that Mr. Holt was never even given an opportunity to argue against those things. Another thing which, and I don't have the record excerpts, we did not put the entire transcript of the county court in, but it's in the record and I can update Your Honors exactly where the transcript is located in the county court so that Your Honors can find it quickly. Another issue, and since the city, much of what they argue are based upon facts and disputes, which obviously would be summary judgment material that should not be the grounds for a dismissal of the case. One of the primary things being that Max, of course it might be important for Your Honors to know, was a trained guard dog, actually was trained at the behest of District Court Judge Keith Sterritt, who recused himself from this case because he was the individual who had encouraged Mr. Holt to have the dog trained as a guard dog. And the individuals who were harassed were the ones who were in Mr. Holt's home when he fell and Max was simply doing his job as a guard dog and was being aggressive towards individuals he did not know. And that is where all these allegations of Max being a vicious dog have come from. All the allegations from animal control all stem from when they tried to get possession of Max while he was doing what he was trained to do, protect his house and his owner. So I think it's important for Your Honors to know that. And then in addition, as far as I know, Your Honor asked about whether or not the estate was still trying to take possession of Max. Number one, that the estate simply authorized this action to continue to seek possession of Max. I think that in and of itself, and that is in a copy of the Chancery Court estate authorization for us to proceed in this matter as part of the record in this case, and I think that in and of itself should be evident. I was just trying to find out as a practical matter, could this possibly be moved if somebody from the estate went to get the dog and the city said you can have the dog? I believe the city has said they have no real argument or objection to Max being given back to the estate. But then somewhere along the line between them and Southern Pines, something comes up to where, and I don't know if Mr. Hicks has been on emails, but his law partner has, discussing the estate taking possession of Max. And, of course, now that's in the record. But just for Your Honor's edification, there have been emails and back and forth. And, in fact, Southern Pines actually did file a lawsuit against Mr. Holt and the city for costs and fees in this case. So it's not just the city that they're claiming these things against. But, Your Honors, we believe that the ordinance itself, the ordinance which the city on page three of our brief and record, page 146, the city says the reason that they have kept Max under oath, they said the reason they kept Max was simply because of the three-day rule, not any other reason. And that was the testimony from the city. And my time is up, and I thank Your Honors for your time today. Thank you, sir.